**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |  |
|---|---|---|
| VICTOR LAJUJ IBOY, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No.: 1:25-cv-13072 |
| | ) | |
| PATRICIA H. HYDE, Acting Field Office | ) | |
| Director, Immigration and Customs | ) | **EMERGENCY PETITION FOR WRIT** |
| Enforcement, Enforcement and Removal | ) | **OF HABEAS CORPUS** |
| Operations, Boston Field Office, ANTONE | ) | |
| MONIZ, Superintendent, Plymouth County | ) | |
| Correctional Facility, TODD LYONS, | ) | |
| Acting Director, Immigration and Customs | ) | |
| Enforcement, KRISTI NOEM, Secretary, | ) | |
| Department of Homeland Security, | ) | |
| PAMELA BONDI, Attorney General of the | ) | |
| United States, | ) | |
| | ) | |
| Respondents. | ) | |
| | ) | |

## INTRODUCTION

1. Petitioner Victor Lajuj Iboy ("Petitioner" or "Mr. Lajuj Iboy") is currently detained at the Plymouth County Correctional Facility ("PCCF") in Plymouth, Massachusetts. Despite an Immigration Judge ("IJ") setting bond in his case, he is unlawfully detained by the Department of Homeland Security ("DHS") who has concluded that Mr. Lajuj Iboy is subject to mandatory detention.

2. Mr. Lajuj Iboy requested a custody redetermination hearing before an Immigration Judge ("IJ"). On July 24, 2025, a custody hearing was held in his case, during which an IJ found that Mr. Lajuj Iboy was eligible for bond, not a danger to the community, and any flight risk could be ameliorated with a bond in the amount of $7,000. Exh. 1 (Order of the

Immigration Judge); Exh. 2 (Memorandum Concerning the July 24, 2025, Decision of the Immigration Court).

3.      Despite the IJ's order setting bond, ICE refused to accept payment, stating that Mr. Lajuj Iboy was not "bondable" because DHS had filed Form EOIR- 43, Notice of ICE Intent to Appeal Custody Redetermination ("Form EOIR-43"). This filing within one business day of the IJ's bond decision triggered the automatic stay of release under 8 C.F.R. § 1003.19(i)(2).

4.      DHS then filed a Form EOIR-26, Notice of Appeal ("Form EOIR-26"), within ten business days of the EOIR-43, blocking the IJ's order during the pendency of the appeal to the Board of Immigration Appeals ("BIA"). Exh. 3 (Notice of Appeal). DHS asserts that Mr. Lajuj Iboy, who is inadmissible under § 1182(a)(6)(A)(i) as someone who entered without inspection, is an "applicant for admission" under 8 U.S.C. § 1125(b)(2)(A) and therefore subject to mandatory detention.

5.      Section 1225(b)(2)(A) does not apply to individuals like Mr. Lajuj Iboy who previously entered and are now residing in the United States. Instead, such individuals are subject to a different statute, § 1226(a), that allows for release on conditional parole or bond. That statute expressly applies to people who, like Mr. Lajuj Iboy, are charged as inadmissible for having entered the United States without inspection.

6.      To this day, Mr. Lajuj Iboy languishes in immigration detention. His continued custody, and DHS's reliance on automatic and discretionary stays, violates the Due Process Clause of the Fifth Amendment and is ultra vires in violation of 8 U.S.C. 1226(a).

7.      Respondents' new legal interpretation is plainly contrary to the statutory framework and contrary to decades of agency practice applying § 1226(a) to people like Mr. Lajuj Iboy.

2

8.      Accordingly, by this Petition, Mr. Lajuj Iboy requests that the Court order his immediate release from detention upon the payment of a $7,000 bond.

## JURISDICTION & VENUE

9.      The U.S. District Court for the District of Massachusetts has jurisdiction to adjudicate the present Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 (habeas corpus) and 28 U.S.C. § 1331 (federal question).

10.      The U.S. District Court for the District of Massachusetts is the proper venue to hear Mr. Lajuj Iboy's petition because Mr. Lajuj Iboy is currently detained at PCCF within the Commonwealth of Massachusetts.

## REQUIREMENTS OF 28 U.S.C. § 2243

11.      The Court must grant the petition for writ of habeas corpus or issue an order to show cause ("OSC") to the respondent "forthwith," unless the petitioner is not entitled to relief. 28 U.S.C. § 2243. If an order to show cause is issued, the Court must require the respondent to file a return "within *three days* unless for good cause additional time, not exceeding twenty days, is allowed." *Id.* (emphasis added).

12.      Courts have long recognized the significance of the habeas statute in protecting individuals from unlawful detention. The Great Writ has been referred to as "perhaps the most important writ known to the constitutional law of England, affording as it does a *swift* and imperative remedy in all cases of illegal restraint or confinement." *Fay v. Noia*, 372 U.S. 391, 400 (1963) (emphasis added).

## PARTIES

13.      Petitioner Victor Lajuj Iboy is a national of Guatemala who is currently detained by ICE at PCCF.

3

14.     Respondent Patricia Hyde is the New England Field Office Director for ICE. She is a legal custodian of Mr. Lajuj Iboy and is named in her official capacity.

15.     Respondent Antone Moniz is the Superintendent of Plymouth and has physical and administrative custody over Mr. Lajuj Iboy. He is named in his official capacity.

16.     Respondent Todd Lyons is the Acting Director for ICE. He is a legal custodian of Mr. Lajuj Iboy and is named in his official capacity.

17.     Respondent Kristi Noem is the Secretary of the U.S. Department of Homeland Security ("DHS"). She is a legal custodian of Mr. Lajuj Iboy and is named in her official capacity.

18.     Respondent Pamela Bondi is the Attorney General of the United States. She is a legal custodian of Mr. Lajuj Iboy and is named in her official capacity.

## FACTS

### A.     Background

19.     Mr. Lajuj Iboy was born in Guatemala on May 7, 2001. In approximately June 2022, he fled Guatemala and entered the United States.

20.     Since Mr. Lajuj Iboy's entry, he has built a life in the United States. He moved to Westborough, Massachusetts where he worked in construction to support himself and his family.

21.     On June 19, 2025, Mr. Lajuj Iboy was arrested by ICE in Westborough, Massachusetts. Exh. 4 (Notice of Custody Determination). This was Mr. Lajuj Iboy's first arrest anywhere in the world. Since that date, Mr. Lajuj Iboy has been in ICE custody at PCCF.

### B.     Mr. Lajuj Iboy's Detention and Bond Hearings

22.     Congress has granted the Attorney General discretion to decide whether to detain or release certain noncitizens pending a removal decision.  *See* 8 U.S.C. § 1226(a). The Attorney

General has delegated that authority to IJs. 8 C.F.R. §§ 1003.19; 1236.1. The discretionary detention provision, 8 U.S.C. § 1226(a), applies only to noncitizens without certain criminal convictions. It contrasts with the mandatory detention provision, 8 U.S.C. § 1226(c), which applies to noncitizens convicted of certain criminal offenses or involved in terrorist activities and requires continued detention.

23. Because Mr. Lajuj Iboy has no criminal record, he was arrested and detained under 8 U.S.C. § 1226(a).

24. When a noncitizen is detained under § 1226(a), DHS makes the initial custody determination, but the noncitizen can request reconsideration by an IJ. Here, DHS initially detained Mr. Lajuj Iboy without bond. *See* Exh. 4 (Notice of Custody Determination). On July 11, 2025, Mr. Lajuj Iboy requested a bond redetermination hearing in front of an IJ.

25. At the bond redetermination hearing on July 24, 2025, the IJ heard evidence and argument from Mr. Lajuj Iboy and the government. DHS argued that Mr. Lajuj Iboy is subject to mandatory detention under a different provision, 8 U.S.C. § 1225(b)(2)(A), which governs detention for noncitizen "applicants for admission"—certain new arrivals to the country. In the alternative, DHS argued that Mr. Lajuj Iboy is a danger and a flight risk, and that no amount of bond could ameliorate that risk. Mr. Lajuj Iboy emphasized his strong ties to the community and submitted multiple letters of support from family and friends.

26. In accordance with longstanding precedent and practice, the IJ rejected DHS's argument that Mr. Lajuj Iboy is subject to mandatory detention. Exh. 2 (Memorandum Concerning the July 24, 2025, Decision of the Immigration Court). The IJ also made specific findings of fact that Mr. Lajuj Iboy is not a danger and presented some flight risk that could be offset by the setting of a bond. *Id.* The IJ set a $7,000 bond. *Id.*; Exh. 1.

27.    Within one business day of Mr. Lajuj Iboy's bond hearing, DHS filed a Form EOIR-43, unilaterally triggering the automatic stay provision of 8 C.F.R. § 1003.19(i)(2). DHS then filed a Form EOIR-26 within ten business days of the EOIR-43, blocking the IJ's order during the pendency of the appeal to the Board of Immigration Appeals. *See* Ex. 3.

28.    Under the automatic stay provision of 8 C.F.R. § 1003.19(i)(2), DHS—the prosecutor—is not bound by the IJ's determination. The prosecutor disagreed with the IJ's decision and unilaterally overrode the order simply by filing a Form EOIR-43. On October 9, 2025, the Board granted a discretionary stay after DHS filed a request.

29.    Mr. Lajuj Iboy now remains in custody in contravention of the IJ's order. DHS's bond appeal to the BIA can take months and as explained more fully below, is likely to be sustained.

**C.    Automatic Stay Regulation**

30.    The relevant regulations provide a mechanism for DHS to automatically stay an IJ's custody order while the government appeals the decision. This mechanism involves no neutral adjudicator considering the merits. Rather, it allows the prosecutor DHS—who lost before the IJ—to unilaterally stay the IJ's decision.

31.    Regulations provide that DHS's automatic stay will lapse in 90 days absent a BIA decision on the appeal, but there are multiple avenues for extension. 8 C.F.R § 1003.36(c)(4). For example, if the BIA does not issue a decision in the 90-day window, DHS can then seek an additional discretionary stay from the BIA. 8 C.F.R. § 1003.6(c)(5). The automatic stay remains in effect for another 30 days while the BIA decides whether to grant a discretionary stay. *Id.*

32.    Likewise, even if the BIA rules in favor of Mr. Lajuj Iboy on appeal and authorizes their release on bond, that release is automatically stayed for five more business days

to give DHS a chance to refer the case to the Attorney General. 8 C.F.R. § 1003.6(d). Then, if DHS refers the case to the Attorney General, the automatic stay is extended for another 15 days. *Id.* The Attorney General may stay release for the pendency of the case. *Id.* There is no prescribed time limit for final resolution of the custody determination, meaning an individual may remain in detention indefinitely.

33.    In sum, Mr. Lajuj Iboy has no way of knowing how long this automatic stay will last and has no opportunity to challenge the stay. In practice, the automatic stay regulation renders the IJ's custody decisions ineffectual and results in the unconstitutional incarceration of persons who, like Mr. Lajuj Iboy, have been found to be neither a danger to the community nor a risk of flight upon the posting of a bond. If DHS disagrees with a custody decision, it can keep Mr. Lajuj Iboy detained for a *minimum* of 90 days, without a truly discernable end point.

34.    Meanwhile, Mr. Lajuj Iboy is in custody and his conditions of confinement are indistinguishable from criminal incarceration. He is separated from family, housed in a facility with criminal defendants, and subject to Plymouth's detention rules.

**LEGAL FRAMEWORK**

35.    The Due Process Clause of the Fifth Amendment provides that "[n]o person shall be … deprived of life, liberty, or property, without due process of law." Under the Due Process Clause, "liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 748, 755 (1987). Detention "for any purpose constitutes a significant deprivation of liberty that requires due process protection." *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992); *see also Trump v. J.G.G.*, 604 U.S. --- 145 S. Cit. 1003, 1006 (2025) (per curiam) ("'It is well established that the Fifth Amendment entitles aliens to due process of law' in the context of removal proceedings.") (quoting *Reno v. Flores*, 507 U.S. 292,

306, 113 S. Ct. 1439 (1993)). The automatic stay of Mr. Lajuj Iboy's release violates his rights to substantive and procedural due process.

36.    The Board's application of a discretionary stay of Mr. Lajuj Iboy's release violates his rights to substantive and procedural due process.

37.    The automatic stay regulation is also an *ultra vires* regulation that unlawfully grants authority to DHS that Congress has delegated only to the Attorney General. *See* 8 U.S.C. § 1226(a).

38.    DHS's application of 8 U.S.C. § 1225(b)(2) to Mr. Lajuj Iboy unlawfully mandates his continued detention and violates the Immigration and Nationality Act ("INA").

**A.    Substantive Due Process**

39.    For immigration detainees, as with other civil detainees, "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty" protected by the Due Process Clause. *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). Detention by the government violates due process in civil proceedings *unless* "a special justification . . . outweigh[s] the individual's constitutionally protected interest in avoiding physical restraint." *Zadvydas*, 533 U.S. at 690.

40.    The automatic stay regulation was originally promulgated in October 2001, in response to the September 11 terrorist attacks, without any opportunity for public comment.

41.    Its promulgation marked a drastic change in practice. Before the automatic stay, there was only one route to stay an IJ's custody determination: a discretionary stay from the BIA. The Immigration and Nationality Service (DHS's predecessor) was required to demonstrate to the BIA that it was likely to succeed on the merits and would suffer irreparable harm in the

interim. The automatic stay provided a second, much easier route: simply filing a short Form

EOIR-43, without any need for an adjudicator to weigh in.

42.    The purported purpose of the automatic stay is to protect the public and "enhance

agencies' ability to effect removal should that be the ultimate final order in a given case."

*Executive Office of Immigration Review; Review of Custody Determination*, 71 Fed. Reg. 57873,

57874 (Oct. 2, 2006).  However, in this case, a neutral decision-maker, an IJ, has already found

that Mr. Lajuj Iboy is not a danger to the public or a risk of flight upon the posting of a bond.

43.    The government has no special or compelling justification to continue detaining

Mr. Lajuj Iboy, and certainly not an interest that outweighs Mr. Lajuj Iboy's interest in avoiding

government restraint. *See Zavala v. Ridge*, 310 F. Supp. 2d 1071, 1077 (N.D. Cal. 2004) ("The

regulation, which permits unilateral government detention of individuals without a case-by-case

determination after a reasoned finding that they do not pose threat to safety or a risk of flight,

violates the Due Process Clause because no special justification exists that outweighs the

individual's constitutionally protected interest in avoiding physical restraint."); *Ashley v. Ridge*,

288 F. Supp. 2d 662, 669 (D.N.J. 2003) ("[T]he Government has not shown that any 'special

justification' exists which outweighs Petitioner's constitutional liberties so as to justify his

continued detention without bail.").

44.    Therefore, the government's application of the automatic stay regulation and

continued detention of Mr. Lajuj Iboy violates his substantive due process rights.

**B.  Procedural Due Process**

45.    Due process also requires an opportunity to be heard at a meaningful time and in a

meaningful manner. *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976).  Federal courts have

consistently applied *Mathews* in the present context of DHS's automatic stay provision.  *See*

9

cases cited *infra*. Mr. Lajuj Iboy received no such opportunity to be heard: Although they received a full bond hearing in front of the IJ, the prosecutor's unilateral stay of the IJ's order rendered that hearing meaningless.

46.    To determine if a post-arrest hearing is sufficient to satisfy the Due Process Clause, courts consider three distinct factors: (1) "the private interest that will be affected by the official action," (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards," and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335.

### *Private Interest*

47.    Mr. Lajuj Iboy's private interest is the right to be free from government detention. "Being free from physical detention by one's own government 'is the most elemental of liberty interests.'" *Anicasio v. Kramer*, No. 4:25CV3158, 2025 WL 2374224, at *3 (D. Neb. Aug. 14, 2025) (quoting *Hamdi v. Rumsfeld*, 542 U.S. 507, 529, 124 S.Ct. 2633, 159 L.Ed.2d 578 (2004)). Claims for relief from detention by all persons including non-citizens "fall within the 'core' of the writ of habeas corpus." *Trump v. J.G.G.*, 145 S.Ct. at 1005.

48.    Mr. Lajuj Iboy's conditions of detention further support this compelling private interest. *See Günaydin v. Trump*, __ F. Supp. 3d __, File No. 25-CV-01151 (JMB/DLM), 2025 WL 1459154, at *7 (D. Minn. May 21, 2025). He is in custody at least an hour away from his home and family, and, despite being in custody for a civil offense, he is detained with, and subject to, the same rules as those incarcerated at PCCF for criminal offenses. *See Hernandez Lara v. Lyons*, 10 F.4th 19, 28 (1st Cir. 2021) ("[Petitioner] was incarcerated alongside criminal

10

inmates at the Strafford County Jail for ten months. During that time, she was separated from her fiancé and unable to maintain her employment.") (citing *Velasco Lopez v. Decker*, 978 F.3d 842, 851 (2d Cir. 2020) ("[Petitioner] was not 'detained'; he was, in fact, incarcerated under conditions indistinguishable from those imposed on criminal defendants sent to prison following convictions for violent felonies and other serious crimes.")); *Sampiao v. Hyde*, No. 1:25-cv-11981-JEK, 2025 WL 2607924, at *10 (D. Mass. Sept. 9, 2025) ("[Petitioner] is being held at the Plymouth County Correctional Facility, a 'secure facility for offenders being held or sentenced for crimes.' His confinement alongside individuals convicted of crimes, where he has neither been charged with nor convicted of any criminal offense, amplifies the burden effected by his ongoing detention.") (footnote omitted).

### *Risk of Erroneous Deprivation*

49.     Mr. Lajuj Iboy has a constitutional liberty interest in not being detained unless he has been found to be either a danger to the community or a risk of flight.  The automatic stay provision creates a large and obvious risk of erroneous deprivation of this liberty interest because the only individuals subject to the automatic stay are those who, like Mr. Lajuj Iboy, prevailed at their bond hearing.  In this case, the IJ found Mr. Lajuj Iboy was not a threat to public safety and with a bond, was not a risk of flight.  Nevertheless, despite a neutral decision-maker finding that release upon the posting of a bond was warranted, the automatic stay provision allowed DHS, the litigant who had lost the motion, to unliterally deprive him of his liberty.  Other courts considering the automatic stay provision have found this problematic as well. *See Sampiao*, 2025 WL 2607924, at *10 ("The regulation's procedures are likely to erroneously deprive people in [Petitioner]'s position of their liberty because only those noncitizens who have already demonstrated their entitlement to release from detention in court are subject to the regulation.");

*Leal-Hernandez v. Noem*, No. 1:25-cv-02428-JRR, 2025 WL 2430025, at *14 (D. Md. Aug. 24, 2025) ("The automatic stay is a violent distortion of proper, legitimate process whereby the Government, as through by talisman, renders itself at once prosecutor and adjudicator."); *Garcia Jimenez v. Kramer*, No. 4:25CV3162, 2025 WL 2374223, at *3 (D. Neb. Aug. 14, 2025) ("The risk of deprivation is high because the only individuals subject to the automatic stay are those who, by definition, prevailed at their bond hearing."); *Zavala*, 310 F. Supp. 2d at 1078 ("The [automatic stay] procedure additionally creates a potential for error because it conflates the functions of adjudicator and prosecutor.").

50.     Additionally, the stay provision does not require DHS to consider or demonstrate any individualized facts or show a likelihood of success on the merits. *See* 8 C.F.R § 1003.19(i)(2) (stating the stay is automatic and the bond "shall be stayed" upon filing of the form EOIR-43). "[A] stay of an order directing the release of a detained individual is an 'especially' extraordinary step, because '[i]n our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception.'" *Gunaydin*, 2025 WL 1459154, at *9 (alteration in original) (quoting *United States v. Salerno*, 481 U.S. 739, 755, 107 S. Ct. 2095, 95 L.Ed.2d 697 (1987)). Accord *Jacinto v. Trump*, No. 4:25CV3161, ___ F.Supp.3d ___, 2025 WL 2402271, at *3 (D. Neb. Aug. 19, 2025).  The automatic stay regulation "turns these well-established procedural principles on their heads and carries a significant risk of erroneous deprivation." *Jacinto*, 2025 WL 2402271, at *3 (quoting *Gunaydin*, 2025 WL 1459154, at *9).

### *Government Interest*

51.     For purposes of this Petition, Mr. Lajuj Iboy will assume that ensuring that persons subject to possible removal do not commit crimes or evade law enforcement during the pendency of their removal proceedings presents a significant governmental interest.  *See*

12

*Gunaydin*, 2025 WL 1459154, at *10. However, in Mr. Lajuj Iboy's case, as in all cases where an IJ has ordered a detainee's release, a neutral decision-maker has already determined that the detainee is neither a danger to the public nor a risk of flight. In addition, the government may continue to pursue its appeal of the Immigration Judge's bond decision even after Mr. Lajuj Iboy is released.

Summary of the *Matthews* Factors

52.     To summarize application of the three *Mathews* factors, Mr. Lajuj Iboy's private interests are compelling; the risk of erroneous deprivation of those interests are extraordinarily high; and the government interest has little if any weight under the facts of Mr. Lajuj Iboy's case. *See* cases cited *supra*. Therefore, Mr. Lajuj Iboy's incarceration violates procedural due process.

**C.  Ultra Vires**

53.     Congress gave the Attorney General discretion to decide whether to release detained noncitizens pending removal proceedings if they have not been convicted of certain criminal offenses and are not linked to terrorist activities. *See* 8 U.S.C. § 1226(a). Congress has also permitted the Attorney General to delegate detention determinations to "any other officer, employee, or agency of the Department of Justice." 28 U.S.C. § 510. IJs are administrative law judges within the Department of Justice and are thus properly delegated. By contrast, DHS is not within the Department of Justice, but rather a separate executive department. *See* 6 U.S.C. § 111.

54.     The automatic stay regulation exceeds the authority given to the Attorney General by Congress and unlawfully eliminates IJ's discretionary authority to make custody determinations. "Because this back-ended approach effectively transforms a discretionary decision by the [IJ] to a mandatory detention imposed by [DHS], it flouts the express intent of Congress and is ultra vires to the statute." *Zavala*, 310 F. Supp. 2d at 1079.

13

55.     Therefore, 8 C.F.R. § 1003.29(i)(2) is invalid and Mr. Lajuj Iboy's detention is ultra vires.

**D. Immigration and Nationality Act**

56.     Two statutes principally govern the detention of noncitizen pending removal proceedings: 8 U.S.C. §§ 1225 and 1226.

57.     Section 1225 provides for detention of noncitizens subject to expedited removal, *see* 8 U.S.C. § 1225(b)(1), and for other recent arrivals seeking admission, *see* § 1225(b)(2). "A noncitizen detained under Section 1225(b)(2) may be released only if he is paroled "for urgent humanitarian reasons or significant public benefit" under 8 U.S.C. § 1182(d)(5)(A)." *Sampiao*, 2025 WL 2607924, at *2 (citing *Jennings v. Rodriguez*, 583 U.S. 281, 300 (2018)).

58.     Section 1226 authorizes the detention of noncitizens in standard removal proceedings before an IJ. *See* 8 U.S.C. § 1229a. After an arrest, DHS makes an initial custody determination, but noncitizens have the right to request a custody redetermination (or bond) hearing before an IJ. 8 C.F.R. § 1236.1(c)(8), (d)(1). Additionally, DHS may release a noncitizen detained under § 1226(a) on an Order of Recognizance, also known as conditional parole. *See* 8 U.S.C. § 1226(a)(2)(B); *Matter of Cabrera-Fernandez*, 28 I. & N. Dec. 747, 747 (BIA 2023) ("The respondents were . . . released on their own recognizance pursuant to [the Department of Homeland Security's] conditional parole authority under . . . 8 U.S.C. § 1226(a)(2)(B)[.]")

59.     The detention provisions at § 1226(a) and § 1225(b)(2) were enacted as part of the Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA) of 1996, Pub. L. No. 104-208, Div. C, §§ 302–03, 110 Stat. 3009-546, 3009–582 to 3009–583, 3009–585. Section

14

1226(a) was most recently amended earlier this year by the Laken Riley Act, Pub. L. No.119-1, 139 Stat. 3 (2025).

60.    The INS/EOIR Federal Register publication of the interim rules implementing IIRIRA clearly states that, "[d]espite being applicants for admission, aliens who are present without having been admitted or paroled (formerly referred to as aliens who entered without inspection) will be eligible for bond and bond redetermination." 62 Fed. Reg. 10323 (Apr. 9, 1997).

61.    Thus, in the decades that followed, most people who entered without inspection and were placed in standard removal proceedings received bond hearings, unless their criminal history rendered them ineligible. That practice was consistent with many more decades of prior practice, in which noncitizens who were not deemed "arriving" were entitled to a custody hearing before an IJ or other hearing officer. *See* 8 U.S.C. § 1252(a) (1994); see also H.R. Rep. No. 104-469, pt. 1, at 229 (1996) (noting that § 1226(a) simply "restates" the detention authority previously found at § 1252(a)). As the Solicitor General stated in oral argument for *Biden v. Texas*, 597 U.S. 785 (2022), it is "DHS's long-standing interpretation has been that 1226(a) applies to those who have crossed the border between ports of entry and are shortly thereafter apprehended." *Martinez v. Hyde*, No. 25-11613-BEM, 2025 WL 2084238 at *4, n. 9 (D. Mass. July 24, 2025) (quoting Transcript of Oral Argument at 44:24-45:2, *Biden v. Texas*, 597 U.S. 785 (2022) (No. 21-954)).

62.    On July 8, 2025, DHS, "in coordination" with DOJ, began to request that Immigration Judges nationwide misclassify bond-eligible § 1226 detainees as mandatory §

15

1225(b)(2) detainees and refuse to conduct bond hearings on that basis.[1] Some Immigration Judges agreed. As a result, numerous detainees were illegally denied bond hearings and sought relief in the federal courts. Numerous courts—including many in the District of Massachusetts—rejected DHS's newly invented misclassification as illegal and ordered the detainees to receive a prompt bond hearing. *See* cases cited *infra*.

63.     The Executive Office of Immigration Review—an entity of DOJ—adopted this position. On September 5, 2025, in *Matter of Yajure Hurtado*, 29 I & N Dec. 216 (BIA 2025), the BIA issued a precedential decision that purports to require *all* Immigration Judges to misclassify people in this manner as subject to detention pursuant to § 1225, even where the documents served on them by ICE indicate that they have been detained pursuant to § 1226. Although *Matter of Hurtado* is just weeks old, multiple courts have already ruled that the decision is not entitled to any deference under *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 412-13 (2024), and have rejected *Hurtado* as contrary to law. *See* cases cited *infra.*

64.     In its appeal to the BIA, DHS relies on *Matter of Hurtado* to argue that Mr. Cesario Souza is now an "applicant for admission" and subject to mandatory detention, despite long-standing agency practice to the country, extensive contrary legal authority discussed below, and even though DHS had previously classified Mr. Cesario Souza as subject to Section 1226(a) discretionary detention. Several federal courts have rejected this exact conclusion. *See, e.g.*, *Doe v. Moniz*, No. 25-cv-12094-IT, 2025 WL 2576819, at *4-5 (D. Mass. Sept. 5, 2025); ECF 16, *Encarnacion v. Moniz*, No. 25-cv-12237-LTS, at 5-6 (D. Mass. Sept. 5, 2025); *Sicha v. Bernal*, No. 25-cv-00418-SDN, 2025 WL 2494530, at *7 (D. Me. Aug. 29, 2025); *Lopez-Campos v.*

---

[1] *See* Interim Guidance Regarding Detention Authority for Applicants for Admission, https://www.aila.org/library/ice-memo-interim-guidance-regarding-detention-authority-for-applications-for-admission.

*Raycraft*,–– F. Supp. 3d ––––, ––––, 2025 WL 2496379, at \*5-8 (E.D. Mich. Aug. 29, 2025); *Ramirez Clavijo v. Kaiser*, No. 25-cv-06248-BLF, 2025 WL 2419263, at \*3-4 (N.D. Cal. Aug. 21, 2025); *Romero v. Hyde*, –– F. Supp. 3d ––––, 2025 WL 2403827, at \*1 (D. Mass. Aug. 19, 2025); *Maldonado v. Olson*, –– F. Supp. 3d ––––, ––––, 2025 WL 2374411, at \*11-13 (D. Minn. Aug. 15, 2025); *dos Santos v. Noem*, No. 1:25-cv-12052-JEK, 2025 WL 2370988, at \*6-8 (D. Mass. Aug. 14, 2025); *Lopez Benitez v. Francis*, –– F. Supp. 3d ––––, ––––, 2025 WL 2371588, at \*3-9 (S.D.N.Y. Aug. 13, 2025); *Rosado v. Figueroa*, No. 25-cv-02157, 2025 WL 2337099, at \*6-11 (D. Ariz. Aug. 11, 2025), *report and recommendation adopted*, 2025 WL 2349133 (D. Ariz. Aug. 13, 2025); *Martinez v. Hyde*, –– F. Supp. 3d ––––, –––– , 2025 WL 2084238, at \*2-8 (D. Mass. July 24, 2025); *Gomes v. Hyde*, No. 1:35-cv-11571-JEK, 2025 WL 1869299, at \*5-8 (D. Mas. July 7, 2025); *Rodriguez v. Bostock*, 779 F. Supp. 3d 1239, 1255-61 (W.D. Wash. 2025).

65.    Here, Mr. Lajuj Iboy was arrested within the United States, served with a Notice of Custody Determination stating that he was detained pursuant to 8 U.S.C. § 1226(a), and served with a Notice to Appear commencing removal proceedings under 8 U.S.C. § 1229a. *See* Exhs. 4, 5.

66.    Mr. Lajuj Iboy is not subject to § 1225(b)(2) detention, which is premised on inspections at the border of people who are "seeking admission" to the United States. 8 U.S.C. § 1225(b)(2)(A). Indeed, the Supreme Court has explained that this detention scheme applies "at the Nation's borders and ports of entry, where the Government must determine whether a[] [noncitizen] seeking to enter the country is admissible." *Jennings*, 583 U.S. at 287.

67.    Mr. Lajuj Iboy's Notice to Appear does not reflect that his encounter constituted an examination or that ICE determined that he was "seeking admission" at the time of issuance.

17

*See* Exh. 5. In fact, the issuing officer declined to designate Mr. Lajuj Iboy as "arriving alien" which is the language used to define the scope of 8 U.S.C. § 235(b)(2)(A) in its implementing regulation. 8 C.F.R. § 235.3(c)(1) ("Except as otherwise provided in this chapter, any *arriving alien* who appears to the inspecting officer to be inadmissible, and who is placed in removal proceedings pursuant to section 240 shall be detained in accordance with section 235(b).") (emphasis added).

68.    Additionally, DHS's interpretation of 8 U.S.C. § 1225(b)(2) would render a recent amendment to the immigration statutes—the Laken Riley Act—superfluous. *See Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 386 (2013) ("[T]he canon against surplusage is strongest when an interpretation would render superfluous another part of the same statutory scheme."); *Stone v. I.N.S.*, 514 U.S. 386, 397 (1995) ("When Congress acts to amend a statute, we presume it intends its amendment to have real and substantial effect."). If all noncitizens who entered without inspection are detained pursuant to § 1225(b)(2), then "there would have been no need for Congress to specify in Section 1226(c)(1)(E) that such citizens are subject to mandatory detention when they are present in the United States without being admitted or paroled *and* when they satisfy the separate criminal conduct criterion." *Sampiao*, 2025 WL 2607924 at *8.

69.    Therefore, 8 U.S.C. § 1225(b)(2) does not apply to Mr. Lajuj Iboy and the government's reliance on the statute to justify its continued detention of Mr. Lajuj Iboy is unlawful and in violation of the INA.

### FIRST CAUSE OF ACTION – UNLAWFUL DETENTION IN VIOLATION OF U.S. CONSTITUTION, FIFTH AMENDMENT – SUBSTANTIVE DUE PROCESS

70.    Mr. Lajuj Iboy realleges and incorporates the allegations contained in the preceding paragraphs of the Petition as if fully set forth herein.

71.     The U.S. Constitution establishes the right to due process for all persons within the United States, including noncitizens, whether their presence here is lawful or unlawful.

72.     Mr. Lajuj Iboy's continued incarceration when he has been found to be neither a danger to the community nor a risk of flight upon posting a bond constitutes a violation of substantive due process.

### SECOND CAUSE OF ACTION – UNLAWFUL DETENTION IN VIOLATION OF U.S. CONSTITUTION, FIFTH AMENDMENT – PROCEDURAL DUE PROCESS

73.     Mr. Lajuj Iboy realleges and incorporates the allegations contained in the preceding paragraphs of the Petition as if fully set forth herein.

74.     Mr. Lajuj Iboy is currently in the custody of Respondents under or by color of the authority of the United States – that is, detained at PCCF at the direction of DHS.

75.     Due process requires the opportunity to be heard at meaningful time and in a meaningful manner. Mr. Lajuj Iboy has not received that opportunity here.

76.     Mr. Lajuj Iboy's liberty interests and the risk of erroneous deprivation of that interest far outweigh the government's interest, if any, in continued detention pursuant to an automatic stay. The automatic stay violates Mr. Lajuj Iboy's procedural due process rights.

### THIRD CAUSE OF ACTION – UNLAWFUL DETENTION IN VIOLATION OF STATUTE, 8 U.S.C. § 1226(a) -ULTRA VIRES REGULATION

77.     Mr. Lajuj Iboy realleges and incorporates the allegations set forth in the preceding paragraphs of the Petition as if fully set forth herein.

78.     Congress gave the Attorney General authority to detain or release noncitizens, pending their removal proceedings, under 8 U.S.C. § 1226(a). The Attorney General has delegated that authority to IJs.

79.     The automatic stay regulation, 8 C.F.R. § 1003.19(i)(2), purports to give DHS the

19

authority to unilaterally override the IJ's decision rendered pursuant to 8 U.S.C. § 1226(a). It is therefore unlawful and *ultra vires*.

80.     Mr. Lajuj Iboy's detention pursuant to the automatic stay regulation is unlawful and in violation of 8 U.S.C. 1226(a).

### FOURTH CAUSE OF ACTION – UNLAWFUL DETENTION IN VIOLATION OF THE IMMIGRATION AND NATIONALITY ACT

81.     Mr. Lajuj Iboy realleges and incorporates the allegations set forth in the preceding paragraphs of the Petition as if fully set forth herein.

82.     The mandatory detention provision at 8 U.S.C. § 1225(b)(2) does not apply to all noncitizens residing in the United States who are subject to the grounds of inadmissibility. As relevant here, it does not apply to those who previously entered the country, were apprehended by immigration authorities within the United States after their entry, and placed in removal proceedings by Respondents. Such noncitizens are detained under § 1226(a), unless they are subject to § 1225(b)(1), § 1226(c), or § 1231.

83.     The application of § 1225(b)(2) to Mr. Lajuj Iboy unlawfully mandates his continued detention and violates the INA.

### PRAYER FOR RELIEF

Wherefore, Mr. Lajuj Iboy respectfully requests that the Court:

A.     Order the immediate release of Mr. Lajuj Iboy upon the posting of a $7,000 that DHS shall accept, pending these proceedings;

B.     If Mr. Lajuj Iboy is not immediately released, order Respondents not to transfer Mr. Lajuj Iboy out of this District during the pendency of these proceedings, to preserve jurisdiction;

C.     Declare that Mr. Lajuj Iboy's detention violates the Fifth Amendment, is ultra vires in

20

violation of 8 U.S.C. § 1226(a), and violates the Immigration and Nationality Act;

D.      Issue a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 and order Respondents to immediately release Mr. Lajuj Iboy from custody in accordance with the bond order from the IJs, or, in the alternative, order Respondents to show cause why this Petition should not be granted within three days;

E.      Award Mr. Lajuj Iboy reasonable attorneys' fees and costs; and

F.      Grant any further relief the Court deems just and proper.

                                        Respectfully submitted,

                                        */s/ Julia Ciachurski*
                                        Julia Ciachurski
                                        BBO# 709052
                                        Political Asylum/Immigration Representation (PAIR) Project
                                        98 N. Washington Street, Suite 106
                                        Boston, MA 02114
                                        (949) 610-3633
                                        jciachurski@pairproject.org

                                        */s/ Daniela Hargus*
                                        Daniela Hargus
                                        BBO# 711041
                                        Political Asylum/Immigration Representation (PAIR) Project
                                        98 N. Washington Street, Suite 106
                                        Boston, MA 02114
                                        (978) 502-7448
                                        dhargus@pairproject.org

                                        *Pro bono counsel for Mr. Lajuj Iboy*

Dated:  October 20, 2025

## <u>VERIFICATION PURSUANT TO 28 U.S.C. § 2242</u>

I, Julia Ciachurski, declare as follows:

I am an attorney admitted to practice law in the Commonwealth of Massachusetts. Because many of the allegations of this Petition require a legal knowledge not possessed by Mr. Lajuj Iboy, I am making this verification on their behalf. I have read the foregoing Petition for Writ of Habeas Corpus and know the contents thereof to be true to my knowledge, information, or belief.

I certify under penalty of perjury that the foregoing is true and correct and that this declaration was executed on October 20, 2025.


*/s/ Julia Ciachurski*
Julia Ciachurski

<u>Certificate of Service</u>

I, Julia Ciachurski, certify that on this 20th day of October 2025, I caused a copy of the foregoing Petition to be served on Respondents' counsel via the CM/ECF platform.

*/s/ Julia Ciachurski*
Julia Ciachurski