UNITED STATES DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
CHELMSFORD IMMIGRATION COURT
CHELMSFORD, MASSACHUSETTS

| | |
|---|---|
| IN THE MATTER OF: ) | |
| ) | **In Bond Proceedings** |
| **LAJUJ IBOY, Victor Noe** ) | |
| **A 240-487-281** ) | **DETAINED** |
| ) | |
| **RESPONDENT** ) | |

CHARGES:        Section 212(a)(6)(A)(i) of the Immigration and Nationality Act ("INA" or "Act"), as amended.

APPLICATION:    Motion for Custody Redetermination.

**ON BEHALF OF THE RESPONDENT:**
Rachel Richardson Bocel, Esq.
Law Offices of Johanna Herrero
100 Cambridge Street, Floor 20
Boston, MA 02114

**ON BEHALF OF DHS:**
Kendall Johnson, Assistant Chief Counsel
Immigration and Customs Enforcement
150 Apollo Drive, Suite 200
Chelmsford, Massachusetts 01824

**MEMORANDUM CONCERNING THE JULY 24th, 2025
DECISION OF THE IMMIGRATION COURT**

This memorandum, submitted pursuant to 8 C.F.R. § 1236.1(d), explains why the Chelmsford Immigration Court ("Court") granted the Respondent's request for a change in custody status.

## I.    PROCEDURAL HISTORY

On June 25th, 2025, the U.S. Department of Homeland Security ("DHS") initiated removal proceedings against Victor Lajuj Iboy ("Respondent") through the filing of a Notice to Appear (NTA) with the Chelmsford Immigration Court. *See* Form 1-862, Notice to Appear (June 25th, 2025).

On July 11th, 2025, the Respondent, through counsel, submitted a request for custody redetermination. Exh. 1. On July 24th, 2025, the Court convened for a custody redetermination hearing at the Respondent's request. Considering the evidence in the record, the Court found that it had jurisdiction to hear the bond argument and found that DHS failed to establish by clear and convincing evidence that the Respondent poses a danger to the community. However, the Court did find that DHS established by a preponderance of the evidence that he poses a flight risk and ordered that a bond of $7,000 be set. Order of the Immigration Judge (July 24th, 2025). DHS appealed the Court's decision to the Board of Immigration Appeals ("Board"). The Court now

EOIR – 1 of 6

issues the instant memorandum to memorialize its findings. *See* Immigration Court Practice Manual, Chap. 9.3(e)(7).

## II.    BOND EXHIBITS

All bond exhibits were admitted into the record without objection. The undersigned has reviewed the record in its entirety and is familiar with all submissions and evidence. Full consideration and appropriate weight have been given to all admitted exhibits and evidence regardless of whether specifically summarized or referenced herein.

>    **Exhibit 1:**    Respondent's Bond Redetermination Request (July 11[th], 2025);
>    **Exhibit 2:**    DHS' Submission of Evidence (July 21[st], 2025);
>    **Exhibit 3:**    DHS' Pre-Hearing Statement (July 21[st], 2025);
>    **Exhibit 4:**    Respondent's Submission of Evidence (July 23[rd], 2025);
>    **Exhibit 5:**    Respondent's Pre-Hearing Statement (July 23[rd], 2025);
>    **Exhibit 6:**    DHS' Submission of Evidence (July 23[rd], 2025); and
>    **Exhibit 7:**    Respondent's Submission of Evidence (August 4[th], 2025).

## III.    APPLICABLE LAW

The Court may review the custody status of a respondent in removal proceedings, provided that the respondent is not subject to mandatory detention pursuant to section 236(c) of the Act. INA § 236(a). When reviewing a respondent's custody status, the Court may order DHS to (1) continue to detain the respondent or (2) release the respondent on either a bond of not less than $1,500.00 or conditional parole. *Id.* Pursuant to the opinion of the First Circuit, DHS bears the burden of proof in custody redetermination proceedings. *Hernandez-Lara v. Lyons*, 10 F.4th 19, 41 (1st Cir. 2021). For the Court to order no change in a respondent's custody status, DHS must prove by clear and convincing evidence that the respondent poses a danger to the community or prove by a preponderance of the evidence that the respondent poses a risk of flight. *Id.*; *see also* 8 C.F.R. §§ 1003.19(h)(3), 1236.1(c)(8).

DHS bears the burden to demonstrate respondent's danger to the community by clear and convincing evidence. *Hernandez-Lara*, 10 F.4th at 41. Clear and convincing evidence is a standard of proof which requires more than the preponderance of the evidence standard applied in most civil cases, but less than the reasonable doubt standard used in criminal proceedings. *Addington v. Texas*, 441 U.S. 418, 425 (1979). The Board of Immigration Appeals ("BIA" or "Board") has defined clear and convincing evidence as "that degree of proof though not necessarily conclusive, which will produce in the mind of the court a firm belief or conviction, or as that degree of proof which is more than a preponderance but less than beyond a reasonable doubt." *Matter of Patel*, 19 I&N Dec. 774 (BIA 1988) (quoting *Matter of Carrubba*, 11 I&N Dec. 914, 917 (BIA 1966)). Alternatively, DHS bears the burden to demonstrate that the respondent poses a flight risk by a preponderance of the evidence. *Hernandez-Lara*, 10 F.4th at 41. [W]hen something is to be established by a preponderance of the evidence it is sufficient that the proof only establish that it is probably true. *Matter of E-M-*, 20 I&N Dec. 77, 80 (BIA 1989); see also *Matter of A-H-*, 23 I&N

Dec. 774, 789 (AG 2005) (Having more evidence for than against is a preponderance of the evidence standard.).

The Board has consistently held that the following factors are significant in a custody redetermination:

1.  Fixed address in the United States. *Matter of Patel*, 15 I&N Dec. 666, 667 (BIA 1979);
2.  Length of residence in the United States. *Matter of Shaw*, 17 I&N Dec. 177, 178 (BIA 1979);
3.  Family ties in the United States, particularly those which can confer immigration benefits on the respondent. *Matter of Shaw*, 17 I&N Dec. at 178; *Matter of Patel*, 15 I&N Dec. at 667;
4.  Employment history in the United States, including length and stability. *Matter of Shaw*, 17 I&N Dec. at 178; *Matter of Patel*, 15 I&N Dec. at 667;
5.  Immigration record and eligibility for relief from removal. *Matter of Andrade*, 19 I&N Dec. 488, 491 (BIA 1987); *Matter of Shaw*, 17 I&N Dec. at 178;
6.  Attempts to escape from authorities or other flight to avoid prosecution. *Matter of San Martin*, 15 I&N Dec. 167, 169 (BIA 1974);
7.  Prior failures to appear for court proceedings. *Matter of Shaw*, 17 I&N Dec. at 178; *Matter of San Martin*, 15 I&N Dec. at 169; and
8.  Criminal record, particularly if such record indicates consistent disrespect for the law. *Matter of Andrade*, 19 I&N Dec. at 490-91.

The Court may base a custody or bond determination upon any information that is available or that is presented by the respondent or DHS.   8 C.F.R. § 1003.19(d).   It is the responsibility of the Court and parties to ensure that the bond record establishes the nature and substance of the information considered. *Matter of Adeniji*, 22 I&N Dec. 1102, 1115 (BIA 1999).

## IV.    FINDINGS OF FACT AND CONCLUSIONS OF LAW

As an initial matter, DHS indicated that it considers Respondent to be an applicant for admission detained under section 235(b) of the Act, and, thus, ineligible for release on bond under section 236(a) of the Act.  DHS cites to *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018), and *Matter of Q. Li*, 29 I&N Dec. 66 (BIA 2025), in support of its argument.  The Court disagrees with the government's interpretation and instead finds that the Respondent was not most recently apprehended at the border, or within the border or ports of entry and thus eligible for a bond hearing.[1] *See id.*

---

[1] In *Jennings v. Rodriguez*, 583 U.S. 281, (2018), the Supreme Court described the statutory language as quite clear and mandate[s] detention of [noncitizens] throughout the completion of applicable proceedings and not just until the moment those proceedings begin. *Id.* at 302-03. The Attorney General then ruled that aliens subject to expedited removal who have a positive credible fear determination and are subsequently placed in formal removal proceedings remain ineligible for bond, whether they are arriving at the border or apprehended in the United States. *Matter of M-S-*, 27 I&N Dec. 509, 515 (AG 2019). Relying on *Jennings*, *Matter of M-S-* rightly determined that sections 235 and 236 apply to separate classes of noncitizens. Until this year, the BIA had not issued a precedential decision analyzing section 235(b)(2)(A) or determining which classes of noncitizens would be subject to mandatory detention under that statute. However, the BIA recently ruled that for aliens arriving in and seeking admission into the United States who are placed directly in full removal proceedings, section 235(b)(2)(A) of the INA . . . mandates detention until removal proceedings have concluded. *Matter of Q. Li*, 26 I&N Dec. 66, 68 (BIA 2025) (citing *Jennings*, 583 U.S. at 299).

EOIR – 3 of 6

exercised its authority to detain the Respondent, and the Form I-286, whether cancelled or not, indicates that when the detention took place, DHS turned to section 236 of the INA to exercise its authority. *See* Exh. 3. If "DHS cannot convert the statutory authority governing... detention from section 235(b) to section 236(a) through the post-hoc issuance of a warrant" in relation to a single apprehension, then it follows it cannot do the reverse by post-hoc cancellation of a warrant, either. *Q. Li*, 29 I&N Dec. 66, 69.

In the bond proceedings before this Court, there is no indication that Respondent is detained pursuant to section 236(c), section 235(b)(1), or section 241 of the Act. Instead, the question is whether he is detained pursuant to section 236(a) or section 235(b)(2). Based on all available evidence to this Court, Respondent is detained pursuant to section 236(a). Accordingly, the Court has jurisdiction to consider the Respondent's request that he be released from custody. INA § 236(a).

After carefully considering the documentary and testimonial evidence and the arguments raised by both parties at the custody determination hearing, the Court found that DHS had not met its burden to demonstrate by clear and convincing evidence that the Respondent poses a danger to the community. *Hernandez-Lara*, 10 F.4th at 41. The Court did find, however, that DHS met is burden to demonstrate by a preponderance of the evidence that the Respondent is a flight risk. *Id.* Accordingly, the Court ordered a bond in the amount of $7,000.

At the hearing, DHS argued that Respondent was a danger and a flight risk. DHS argued that the Respondent had a family member who was observing his bond hearing wearing a Chicago ~~Bulls T-shirt, which meant the Respondent was obviously gang affiliated. DHS argued that the~~ Respondent entered the country without inspection or parole. DHS also noted that the Respondent had not filed any applications for relief before the Court or before U.S. Citizenship and Immigration Services ("USCIS"). Respondent's counsel argued that what the Respondent's family member was wearing is not relevant to the bond hearing. She argued the Respondent has no criminal record anywhere in the world and has maintained a single address since his arrival in the United States in 2022. The Respondent has also maintained the same employment since his entry to the United States and he engages regularly with his family, friend, and colleagues. Respondent's counsel maintained that Respondent would retain her services and file an asylum application.

Upon careful consideration of the entirety of the record, the Court found that DHS had not met its burden of proving that the Respondent poses a danger to the community. *Hernandez-Lara*, 10 F.4th at 41. Respondent has no criminal history, and DHS has not offered any evidence that he engages in criminal activity. *See* Exh. 2, 5, 6.

DHS also bears the burden of proving by a preponderance of the evidence that the Respondent poses a risk of flight. *Hernandez-Lara*, 10 F.4th at 41. With respect to flight risk, the Court found that DHS met their burden. The Court noted a variety of factors in making this finding. First, the Court noted that the Respondent does have a length of residence in the United States, he has a fixed address, and he has family ties. Furthermore, he submitted letters of support attesting to his character. Exh. 4. Respondent's counsel indicated that the Respondent plans to now file an asylum application. However, the Court notes that the Respondent has been unlawfully

An applicant for admission who is arrested and detained without a warrant *while arriving* in the United States, whether or not at a port of entry, and subsequently placed in removal proceedings is detained under INA § 235(b) and is ineligible for any subsequent release on bond under INA § 236(a). *Q. Li*, 29 I&N Dec. 66. However, the Court finds that the phrase, "a[] [noncitizen] seeking admission," contained in INA § 235(b)(2)(A) should be read to *narrow* those subject to mandatory detention under that subsection to noncitizens who are apprehended while seeking to enter the country, and that noncitizens "already residing in the United States," including "those who are charged with inadmissibility," like Respondent, continue to fall under the discretionary detention scheme in INA § 236. To support this argument, the Court finds persuasive reasoning in *Ramon Rodriguez Vazquez, v. Drew Bostock, et al.*, 3:25-cv-05240 (W.D. Wash.).[2] Moreover, it has been longstanding EOIR and DHS practice to apply section 236(a) of the Act to inadmissible noncitizens already residing in the country, and DHS has cited no controlling or persuasive authority for their position. This is evident from a review of three sections of the Act governing detention: sections 236, 235, and 241.

Section 236(a) of the Act states:

> On a warrant issued by the Attorney General a[] [noncitizen] may be arrested and detained pending a decision on whether the [noncitizen] is to be removed from the United States. Except as provided in subsection (c) and pending such decision, the Attorney General ... may continue to detain the arrested [noncitizen]; and . . . may release the [noncitizen] on . . . bond of at least $1,500 ... or ... conditional parole. . . .

*See* INA § 236(a). The text of the statute specifically contemplates that those not subject to section 236(c) of the Act are eligible for release on bond "pending a decision on whether or not they will be removed" and this includes the right to a bond hearing before an Immigration Judge pursuant to 8 C.F.R. § 1003.19(a) and 8 C.F.R. § 1236.1(d). *See* 8 C.F.R. §§ 1003.19(a), 1236.1(d).

Section 235 separately provides for the detention of noncitizens subject to *expedited removal* specifically under section 235(b)(1) and of other recent arrivals seeking admission as referred to under section 235(b)(2) of the Act. Last, section 241 of the Act provides for the detention of individuals who have been previously ordered removed and for individuals in withholding-only proceedings. *See* INA § 241.

In this case, DHS submitted a once-valid Form I-286 that purported to now be cancelled via a hand-written strike-out across the form's face. DHS argued that the form was legally insignificant as it was issued in error. The Court finds that DHS cannot exercise its authority to detain the Respondent under section 236 of the INA, as indicated in the Form I-286, and then attempt to cancel it after the Respondent's detention to circumvent the law. DHS has already

---

[2] Numerous Federal District Courts have agreed that section 236(a) is the relevant statue of detention in cases similar the one before this Court, including multiple courts in Massachusetts. *Lopez Benitez v. Francis*, No. 25-cv-5937-DEH (S.D.N.Y. July 28, 2025); *Maldonado Bautista v. Santacruz*, No. 5:25-cv-1873-SSS-BFM (C.D. Cal. July 28, 2025); Martinez v. Hyde, --- F. Supp. 3d --- , 2025 WL 2084238 (D. Mass. July 24, 2025); *Gomes v. Hyde*, No. 25-11571, 2025 WL 1869299 (D. Mass. July 7, 2025).

present in the United States over three years and has never sought to regularize his status. Any relief would also be speculative, and the Respondent would have to overcome the one-year filing deadline bar. Accordingly, the Court found that Respondent poses a flight risk. *Matter of Patel*, 15 I&N Dec. at 667; *Matter of Shaw*, 17 I&N Dec. at 178; *Matter of Andrade*, 19 I&N Dec. at 491.

However, the Court found that a bond would mitigate that risk. Accordingly, the Court found that the Respondent warranted a redetermination of his custody status and set a bond amount of $7,000 to ensure Respondent's appearance at any future hearings.

___Sept. 5, 2025_____           *Christine L. Olson*
Date                                    **CHRISTINE OLSON**
Immigration Judge